IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

HANK WILLIAMS,

        **Plaintiff,**

v.                                     **Case No.: 1:20-cv-00642**

KILOLO KIJAKAZI,
**Acting Commissioner of the
Social Security Administration,**

        **Defendant.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 15, 16).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the pleadings to the extent that it requests

1

remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g);
**DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the
final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of
42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and
**DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.    Procedural History

In September 2017, Hank Williams ("Claimant") protectively filed for DIB and SSI,
alleging a disability onset date of August 31, 2014 due to "two back [surgeries], PTSD, left
knee surgery, diabet[es], high blood pressure, inactive thyroid, bipolar, depression, severe
anxiety, chronic fatigue, and difficulty breathing." (Tr. at 282-91, 328). After his
applications were denied at the initial and reconsideration levels of review, Claimant
requested an administrative hearing, which was held before the Honorable Thomas W.
Erwin, Administrative Law Judge (the "ALJ") on October 9, 2019. (Tr. at 99-125). By
written decision dated October 29, 2019, the ALJ found that Claimant was not disabled
as defined by the Social Security Act. (Tr. at 40-59). The ALJ's decision became the final
decision of the Commissioner on August 20, 2020 when the Appeals Council denied
Claimant's request for review. (Tr. 7-13).

Claimant timely filed the present civil action seeking judicial review pursuant to 42
U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing
Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 11,
12). Claimant filed a Memorandum in Support of Motion for Judgment on the Pleadings
and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 15, 16).
The time period within which Claimant could file a reply to the Commissioner's response
expired. Consequently, the matter is fully briefed and ready for resolution.

## II.   **Claimant's Background**

Claimant was 41 years old on his alleged onset date and 46 years old on the date of the ALJ's decision. (Tr. at 53). He communicates in English, has a Bachelor's degree, and previously worked as an automobile detailer, mobile home salesperson, correction officer, brush-cleaning laborer, and glass installer. (Tr. at 103, 121, 327, 329).

## III.   **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2019. (Tr. at 45, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since August 31, 2014, the alleged disability onset date. (*Id.*,

Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: intermittent explosive disorder, depression, anxiety, lumbar strain, asthenia, obesity, diabetes, hypertension, restless leg syndrome, residuals of right shoulder surgery, and hypothyroidism. (Tr. at 46, Finding No. 3). Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 46-49, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the right upper extremity, and can have occasional exposure to extreme cold, wetness, and vibrations. He can handle occasional changes in the work setting, but cannot do production rate or pace work (such as assembly line work or work with strict daily quotas). He should not have interaction with the public, but can handle occasional interaction with coworkers and supervisors.

(Tr. at 49-52, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 53, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 53-54, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1973 and was defined as a younger individual age 18-49 on his alleged disability onset date; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled" regardless of whether he had transferable job skills. (Tr. at 53, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the

6

testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including the positions of clothing bagger, housekeeping cleaner, and marker. (Tr. at 53-54, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 54, Finding No. 11).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts that the Commissioner's decision is unsupported by substantial evidence because the ALJ did not properly (1) explain the RFC finding concerning Claimant's ability to interact with others, (2) analyze Claimant's subjective symptoms, or (3) consider the opinions of Claimant's treating providers. (ECF No. 15 at 6-14). In response to Claimant's challenges, the Commissioner argues that the ALJ reasonably found that Claimant was not disabled under the stringent requirements of the Act and Regulations, adequately explained and cited substantial evidence supporting his assessment of Claimant's subjective complaints and RFC, and properly considered the medical opinion evidence under the revised regulatory framework. (ECF No. 16 at 9-18).

## V.    **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A. Treatment Records

Claimant presented to Southern Highlands Community Mental Health Center ("Southern Highlands") on April 14, 2015. (Tr. at 425). He reported suffering from depression and anxiety for the past five to five and one-half months. (*Id*.). Claimant stated that he mostly avoided people, but he attended church. (Tr. at 428). The intake staff members recommended a psychiatric evaluation, which Staci Craft, PA-C, performed on

April 28, 2015. (Tr. at 429, 448). PA-C Craft recorded normal mental status examination findings, including that Claimant maintained good eye contact; was pleasant, cooperative, alert, logical, and fully oriented; and demonstrated euthymic mood with congruent affect. (Tr. at 451). She diagnosed Claimant with generalized anxiety disorder and depressive disorder not otherwise specified for which she prescribed Viibryd and Klonopin. (Tr. at 452).

Claimant had a readmission evaluation at Southern Highlands on August 11, 2017. He noted that he was effectively treated with medication in April 2015, but he could not follow up with PA-C Craft because he was incarcerated for 16 months for "beating up a state cop" who he believed was having an affair with his wife. (Tr. at 432). Claimant was currently divorced and living with his girlfriend. (Tr. at 431). He reported a long history of difficulty controlling his anger, and he stated that the issue was worsening, as he had "no tolerance for people." (Tr. at 432). Claimant had "a couple" of close friends, but he avoided crowds and did not participate in any regular social activities. (Tr. at 433). He said that he no longer attended church after his wife "had an affair with their preacher." (*Id.*). Claimant reportedly got into trouble in school multiple times for fighting and was expelled his senior year of high school after a fight. (*Id.*). He was last employed in a friend's construction business eight months earlier, but he quit after he became angry with another employee and was afraid that he would hurt him. (*Id.*). Claimant stated that his primary occupations as an adult were boxing and kickboxing. (*Id.*). On examination, Claimant was cooperative, but he displayed anxious mood, poor self-concept, and occasional impaired judgment due to impulsivity. (Tr. at 434). The staff member recommended that Claimant undergo another formal psychiatric evaluation. (Tr. at 435).

PA-C Craft examined Claimant on September 13, 2017. Claimant was cooperative,

interacted well, said that his mood was improved, and claimed that he felt "great." (Tr. at 438-39). However, Claimant expressed that he still had difficulty being around people, was aggressive, and felt like he could hurt someone. (Tr. at 438). He was taking the antipsychotic medication, Geodon, as well as Valium. (Tr. at 439). During subsequent appointments in September and October 2017, Claimant interacted well and was cooperative with PA-C Craft, but he expressed that he had difficulty being around others, felt rage and aggression toward other people, and remained socially isolated. (Tr. at 440-45). PA-C Craft added Depakote to Claimant's medication regimen on September 26, 2017, and Claimant stated on October 18, 2017 that it was effective in keeping him from "beating the sh*t out of someone." (Tr. at 441, 443, 444, 445).

On November 1, 2017, Claimant told PA-C Craft that Depakote was somewhat effective, but he continued to experience issues with rage, agitation, social isolation, and aggression. (Tr. at 446). Claimant likewise expressed feelings of rage to PA-C Craft in December 2017 and January 2018, but he acknowledged that medication helped "some." (Tr. at 487, 491-92). Claimant was cooperative and interacted well with PA-C Craft, but he was irritable during his appointments, and he expressed daily homicidal ideation. (Tr. at 487-88, 491-92). PA-C Craft prescribed Xanax in place of Valium and renewed Claimant's prescriptions for Geodon and Depakote. (*Id.*). Claimant's records in February and March 2018 were largely unchanged, except that PA-C Craft added doxepin to Claimant's medication regimen. (Tr. at 493-96). On April 5, 2018, Claimant reported that he still had feelings of rage, "went off" and struck his girlfriend, and was unable to control his anger. (Tr. at 497). PA-C Craft added Wellbutrin to Claimant's other medications. (Tr. at 498). On May 23, 2018, Claimant's clinical record was essentially unchanged; he stated that he had constant feelings of rage. (Tr. at 544-45).

Claimant underwent a clinical re-evaluation at Southern Highlands on August 14, 2018. He stated, "I have no patience. I hate people." (Tr. at 538). He was socially withdrawn and paranoid. (*Id*.). Through November 2018, Claimant continued to report feelings of rage, and he felt like he could hurt someone. (Tr. at 546-51). He was irritable, but he was cooperative and interacted well with PA-C Craft. (*Id*.). Claimant remained socially isolated. (Tr. at 658). On June 20, 2019, Claimant saw a new treating provider at Southern Highlands, Staci L. Linkous, PA-C. (Tr. at 660). He told PA-C Linkous that he suffered from increased agitation and difficulty controlling his anger. (*Id*.). Although Claimant was pleasant and cooperative during the appointment, PA-C Linkous diagnosed Claimant with intermittent explosive disorder, depression, and anxiety. (Tr. at 661). On September 12, 2019, Claimant advised PA-C Linkous that he remained volatile, very irritable, and angry. (Tr. at 662). He requested an increase in Depakote. (*Id*.). Claimant was pleasant, cooperative, and engaged during his visit with PA-C Linkous, but his diagnoses remained major depressive disorder, generalized anxiety disorder, and intermittent explosive disorder. (Tr. at 663). PA-C Linkous prescribed Xanax, Depakote, and Wellbutrin. (*Id*.).

### B. Prior Administrative Findings and Opinions

On January 8, 2018, state agency psychologist David Allen, Ph.D., performed a psychiatric review technique based upon his review of Claimant's records. Dr. Allen concluded that Claimant had moderate limitation interacting with others; mild limitation understanding, remembering, or applying information and maintaining concentration, persistence, or pace; and no limitation adapting or managing himself. (Tr. at 133, 149). He assessed that Claimant had the mental RFC to be exposed to occasional contact with public/customers and superficial contact with coworkers and supervisors. (Tr. at 137-38,

153). Dr. Allen noted that Claimant should refrain from involvement in intensive team-based activities. (Tr. at 138). At the reconsideration level of review on May 18, 2018, state agency psychologist Debra Lilly, Ph.D., assessed that Claimant had mild limitation adapting and managing himself, but moderate restriction in all other paragraph B criteria. (Tr. at 165, 183). She affirmed Dr. Allen's mental RFC assessment. (Tr. at 171, 189).

On September 17, 2019, PA-C Linkous completed a medical opinion form regarding Claimant's ability to do mental work-related activities, which was co-signed by supervising psychiatrist, Alina Vrinceanu-Hamm, M.D. (Tr. at 672-73). PA-C Linkous opined that Claimant could adhere to basic standards of neatness and cleanliness and had a limited but satisfactory ability to maintain regular attendance and be punctual, but he had serious limitations in five categories of mental functioning and was unable to meet competitive standards in the remaining 18 areas of mental functioning. (*Id*.). In support of the assessment, PA-C Linkous cited, *inter alia*, Claimant's explosive temper, impulsive behavior, and inability to tolerate other people. (*Id*.).

### C. *Claimant's Testimony*

Claimant testified during his administrative hearing on October 9, 2019 that he had an anger issue his whole life, but it worsened with age. (Tr. at 107). He noted various criminal charges, including incarceration for 15 months after assaulting someone. (Tr. at 107-08). Claimant testified that he lost every job that he ever had due to his temper, and he came "off the chain" in high school and had problems with anger since he was very young. (Tr. at 112). Claimant stated that his girlfriend stayed with him sometimes, but he was mostly alone. (Tr. at 112-13). His girlfriend reportedly "could [not] stand" him continuously, and she left to stay with her parents when she saw Claimant "gettin' mad." (Tr. at 108, 112-13). Claimant testified that he lost almost all of his friends and was also

banned from Walmart due to his anger issues. (Tr. at 114). He stated that he had no relationship with his four siblings and relinquished his parental rights to his two children. (Tr. at 117).

## VI.   <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.   <u>Discussion</u>

Claimant's challenges concern the ALJ's RFC assessment. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to

do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the **most** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id*. According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d)

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has

13

limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

### A.  Interacting with Others

Claimant contends that the ALJ did not reconcile or explain his findings that Claimant had marked impairment interacting with others and could have no interaction with the public, yet Claimant had the RFC to occasionally interact with coworkers and supervisors. (ECF No. 15 at 7). At step two, the ALJ applied the special technique to assess Claimant's functioning in the paragraph B criteria. The ALJ discussed that the functional area of "interacting with others" referred to Claimant's capacity to relate to and work with supervisors, coworkers, and the public. (Tr. at 48). In that regard, the ALJ found that Claimant had some issues with anger and frustration during several documented encounters; treating providers generally recorded deficiencies in Claimant's eye contact, speech, and overall behavior; Claimant's activities of daily living were reportedly limited; and Claimant was confrontational with family and friends. (*Id.*). Based on that evidence,

14

the ALJ assessed that Claimant's ability to interact with others was markedly limited. (*Id.*).

In the RFC analysis, the ALJ acknowledged various pieces of evidence, such as Claimant's testimony that crowds caused him to become nervous and violent, and he quit working for his friend's construction business because he became angry with another employee and was concerned that he was going to get into an altercation. (Tr. at 49-50). The ALJ stated that, although Claimant reported problems with anger and inability to be around people, he presented as calm, rational, and appropriate during encounters with physical and mental health professionals, his mental status findings did not support that he was completely unable to function in a work-related environment, he had only two mental health visits in 2019, his medications were not significantly changed, he did not have any legal complications related to anger, he maintained a relationship with his girlfriend, and he indicated that he lived with other friends in his initial function report. (Tr. at 51, 52).

The ALJ concluded that the state agency psychologists' findings that Claimant could have occasional contact with the public and customers and superficial contact with coworkers and supervisors without intensive team-based work activities were supported by the evidence outlined in the decision and consistent with the evidence that, despite his mental health concerns, Claimant could perform a variety of tasks in a work environment that did not require him to work in close proximity to coworkers or supervisors. (Tr. at 52). The ALJ determined that, even taking Claimant's statements into account, Claimant was capable of performing jobs which did not require a great deal of interaction with coworkers of supervisors. (Tr. at 51). The ALJ further described that Claimant would likely do best in work situations in which instructions were provided and Claimant was

left to himself to complete tasks. (*Id.*). He assessed that Claimant had the RFC to never interact with the public and occasionally interact with coworkers and supervisors. (Tr. at 49).

The ALJ's foregoing analysis is internally inconsistent and fails to build a logical bridge to his RFC assessment regarding Claimant's ability to interact with others. As Claimant argues, the ALJ did not properly explain the basis for his RFC findings that Claimant did not have any ability to be around the public, yet he could occasionally interact with coworkers and supervisors. The ALJ explicitly found that Claimant's ability to interact with supervisors, coworkers, and the public was markedly limited. He did not offer any analysis or cite to evidence to delineate between Claimant's ability to interact with the public as compared to his ability to interact with coworkers and supervisors. Therefore, the ALJ's reasoning for the RFC assessment is unknown.

In addition, the ALJ's analysis is inconsonant. At step two, the ALJ indicated that Claimant did not appropriately interact with providers, and he cited that as a basis for his conclusion that Claimant had marked impairment interacting with others. However, in the RFC assessment, the ALJ concluded that Claimant interacted appropriately with providers, which supported that Claimant did not have more serious limitations than the ALJ found. The ALJ did not explain the differing interpretations of the same evidence. The ALJ also cited evidence that Claimant was confrontational with family and friends and quit a recent job because he became angry with a coworker. Yet, the ALJ did reconcile that evidence with his finding that Claimant could occasionally interact with supervisors and coworkers when it would seem to argue the opposite conclusion.

Furthermore, the ALJ purportedly found the state agency psychologists' prior administrative findings persuasive because they satisfied the regulatory factors of

supportability and consistency, yet the ALJ assessed disparate RFC restrictions without any explanation. The experts concluded that Claimant could have occasional contact with the public and customers and superficial contact with coworkers and supervisors. (Tr. at 137-38, 153, 171, 189). By contrast, the ALJ found that Claimant could have no contact with the public and occasional contact with coworkers and supervisors. (Tr. at 49). While the ALJ was not obligated to adopt the prior administrative findings, he was required to address conflicting evidence and explain his conclusions regarding Claimant's RFC.

Finally, in addition to the ALJ's failure to reconcile key evidence, the explanation which the ALJ provided did not correspond to the RFC limitations that he ultimately assessed. The ALJ stated that Claimant required a job environment that "did not require a great deal of interaction with coworkers or supervisors," "where instructions were given and then he was left to himself to complete tasks," and he did not work "in close proximity to coworkers or supervisors." (Tr. at 51, 52). However, those restrictions did not appear in the RFC finding or the hypothetical that the ALJ posed to the VE. (Tr. at 49, 122). Rather, the ALJ limited Claimant's RFC to occasional interaction with coworkers and supervisors. (*Id*.). The term "occasional" can include up to one-third of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5. It is not clear that the limitations that the ALJ discussed, including restrictions that Claimant could not work in close proximity to others, complete tasks independently, and not have a "great deal" of interaction with coworkers and supervisors, were consistent with the RFC limitation of occasional interaction with coworkers and supervisors.

Overall, the ALJ did not sufficiently explain and support his findings regarding Claimant's ability to interact with others, which precludes meaningful review of the RFC assessment. A "proper RFC analysis has three components: (1) evidence, (2) logical

explanation, and (3) conclusion," and "[t]he second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon his analysis of Claimant's ability to interact with others.

### B. Subjective Symptoms

Claimant further argues that the ALJ's analysis of his subjective symptoms under SSR 16-3p was "woefully inadequate." (ECF No. 15 at 10). He contends that the ALJ did not properly consider his testimony, statements to providers, or diagnosis of intermittent explosive disorder. (*Id.* at 10-12). Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective March 27, 2017).

First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or

psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id*. §§ 404.1529(a), 416.929(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable

evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

In *Hines v. Barnhart*, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be

20

expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at \*10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for that of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ noted Claimant's allegations that crowds caused him to become nervous and violent, and he had thoughts of harming others. (Tr. at 49-50). After considering the evidence, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. at 51). However, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ found that Claimant's statements that he had anger issues and could not be around people were inconsistent with the evidence for two reasons: (1) he interacted calmly, rationally, and appropriately with medical providers and (2) his mental status examination findings "did not support a complete inability to function in a work-related environment." (*Id.*).

Although the ALJ performed the two-step process, his analysis is not supported by substantial evidence. As discussed, the ALJ reached the contrary finding at step two that Claimant's treating providers "generally documented deficiencies in Claimant's eye contact, speech, or overall behavior." (Tr. at 48). The ALJ did not evaluate whether those abnormal mental status examination findings were consistent with Claimant's allegations regarding his mood issues and social limitations. Furthermore, the ALJ dismissed Claimant's allegations on the basis that Claimant's mental status examination findings "did not support a complete inability to function in a work-related environment." However, the ALJ did not explain his application of that standard. The ALJ listed Claimant's specific mental allegations as anger issues and an inability to be around people. The ALJ should have compared those allegations to the other evidence in the record. In other words, the ALJ should have evaluated whether the evidence supported Claimant's allegations that he suffered from anger and could not be around other people, not simply whether the evidence supported that Claimant was totally disabled. The ALJ cited some pieces of evidence which was relevant to those issues, but he never explained how it factored into the subjective symptom analysis. (Tr. at 50-51).

The ALJ's subsequent explanation that Claimant had only two mental health visits in 2019, his medications remained stable without significant change, there were no legal complications related to anger, Claimant maintained a relationship with his girlfriend, and he reported that he lived with friends in his initial function report leaves much to be desired. The ALJ did not account for contrary evidence that Claimant was reportedly incarcerated during the relevant period for 16 months for assaulting a police officer. (Tr. at 432). Furthermore, Claimant admitted in 2018 that he struck his girlfriend because he was "unable to control his anger" even though he was taking Geodon, Xanax, Depakote,

and doxepin. (Tr. at 497). Claimant was socially withdrawn, paranoid, and irritable. (Tr. at 538, 658). PA-C Linkous diagnosed him with intermittent explosive disorder and added Wellbutrin to his list of medications. (Tr. at 497, 661, 663). Claimant also testified that he was expelled from high school, was banned from Walmart, and lost every job that he ever had due to anger issues. (Tr. at 112, 114). He further stated that, although his girlfriend stayed with him sometimes, he was mostly alone because she left and stayed with her parents when she observed him getting mad. (Tr. at 108, 113). The ALJ did not properly discuss the above pertinent evidence.

Regarding the opinion evidence, the ALJ noted that Claimant's mental health provider assessed that Claimant had severe mental limitations. (Tr. at 52). The ALJ acknowledged that Claimant had social limitations due to anger issues, but the ALJ found that the mental status examinations did "not document symptoms that would result in complete inability to function outside of home." (*Id.*). The ALJ did not explain the basis for that standard or how it supported the ALJ's analysis of Claimant's subjective symptoms. Furthermore, as previously indicated, the ALJ did not adequately explain how the prior administrative findings impacted the decision. The ALJ purported to find them persuasive, but he assessed different RFC limitations. It is unclear how those findings factored into the ALJ's analysis of Claimant's subjective symptoms.

In sum, while the ALJ was not required to cite or discuss every detail of each piece of evidence, the ALJ was obligated to address evidence that directly conflicted with his findings and adequately explain his analysis of Claimant's allegations. The ALJ failed to fulfill his duties in this case. For those reasons, the undersigned **FINDS** that the ALJ should reconsider or elaborate upon his analysis of Claimant's subjective symptoms on remand.

### C. *Treating Opinions*

Claimant next contends that the ALJ improperly disregarded the medical opinion of his treating providers PA-C Linkous and Dr. Hamm. (ECF No. 15 at 12-13). Claimant's applications were protectively filed in September 2017. (Tr. at 43). Thus, the revised regulations, which concern applications filed on or after March 27, 2017, apply to Claimant's claims. Under the revised regulations, the ALJ must evaluate the persuasiveness of all medical opinions, which are defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2), 416.920c.

The regulatory factors that the ALJ must consider when evaluating medical opinions include: supportability; consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id.* at §§ 404.1520c(c), 416.920c(c). The primary factors under consideration are supportability and consistency. The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). The term "supportability" means that "[t]he more relevant the objective medical evidence

24

and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

PA-C Linkous submitted a medical opinion regarding Claimant's ability to do mental work-related activities, which Dr. Hamm co-signed, in September 2019. (Tr. at 672-73). On that form, PA-C Linkous assessed that Claimant could adhere to basic standards of neatness and cleanliness and had a limited but satisfactory ability to maintain regular attendance and be punctual, but he had serious limitations in five categories of mental functioning and was unable to meet competitive standards in the remaining 18 areas of mental functioning. (*Id.*). PA-C Linkous noted, *inter alia*, Claimant's explosive temper, impulsive behavior, and inability to tolerate other people. (*Id.*).

The ALJ acknowledged PA-C Linkous and Dr. Hamm's medical source statement, including their opinions that Claimant had a seriously limited ability to remember work-like procedures and understand, remember, and carry out very short and simple instructions, and he was unable to meet competitive standards for maintaining attention and concentration, working in coordination with others, completing a normal workday and workweek, and getting along with coworkers and supervisors. (Tr. at 52). However, the ALJ found that the limitations expressed in the medical opinion were inconsistent

with the evidence in the record, stating that "[t]he multiple mental status findings support the claimant's limitations in social interaction due to anger issues, but they do not document symptoms that would result in complete inability to function outside of her [sic] home." (*Id.*).

The ALJ's evaluation of the treating source statement is grossly inadequate. First, the ALJ did not address the supportability of the opinion, as required by the regulations. (Tr. at 52); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). PA-C Linkous listed mental status examination findings to support her assessment of Claimant's ability to do mental work-related activities. (Tr. at 672-73). The ALJ should have evaluated whether the objective medical evidence and supporting explanations that PA-C Linkous provided made her opinion more or less persuasive. 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1), 416.920c(b)(2), 416.920c(c)(1).

Furthermore, the ALJ's reasoning that PA-C Linkous's opinion was inconsistent with the evidence of the record because Claimant's mental status examination findings did not document symptoms that would result in complete inability to function outside of his home is unavailing. That explanation does not address any of the mental functional abilities listed in the medical source statement. PA-C Linkous assessed Claimant's ability to perform mental work activities on a function-by-function basis, such as Claimant's ability to perform simple tasks, work with others, and maintain attention. (Tr. at 672-73). Instead of comparing those findings to the evidence from other sources, the ALJ dismissed the opinion as non-persuasive for an extraneous reason that Claimant could function outside of the home. The issue of whether Claimant could function outside of the home was not the subject of PA-C Linkous's opinion. The opinion concerned work activities. The ALJ should have evaluated whether PA-C Linkous's opinion regarding

Claimant's ability to do mental work activities was consistent with the evidence.

For those reasons, the undersigned **FINDS** that the ALJ's evaluation of the treating medical opinion is not supported by substantial evidence, and the ALJ should reconsider or elaborate upon his analysis of the opinion on remand.

## VIII.   <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 15), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 16); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute

a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 16, 2021

Cheryl A. Eifert
United States Magistrate Judge

28